Thomas S. JONES, Plaintiff-Appellant,
Cross-Appellee,

v.

CENTRAL SOYA COMPANY, INC.,
Defendant-Appellee,
Cross-Appellant.

No. 83–7468.

United States Court of Appeals,
Eleventh Circuit.

Dec. 10, 1984.

Champ Lyons, Jr., Mobile, Ala., for plaintiff-appellant, cross-appellee.

William C. Tidwell, III, Kathryn Anne Eckerlein, Mobile, Ala., for defendant-appellee, cross-appellant.

Before HILL and HENDERSON, Circuit Judges, and WISDOM *, Senior Circuit Judge.

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as

ALBERT J. HENDERSON, Circuit Judge:

Thomas S. Jones and Central Soya Company, Inc. ("Central") both challenge the reasonableness of the amount of attorney's fees awarded to Jones by the United States District Court for the Southern District of Alabama in a successful action against Central alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"). The jury found Central's conduct to be willful and awarded Jones double damages in the amount of $41,666.42. The district court later granted Jones an additional interim amount of $18,796.00 as well as reinstatement with full pension benefits.

Pursuant to a provision in 29 U.S.C. § 216(b) authorizing reasonable attorney's fees to the prevailing plaintiff in an ADEA action, the district court awarded Jones approximately $24,000.00 allocable to counsel fees. On appeal, Jones alleges that the amount was insufficient because of 1) the exceptional result obtained in the litigation, 2) the purported contingency fee arrangement between Jones and his counsel, and 3) the delay in payment of the attorney's fees. Central cross appeals, contending that the district court improperly awarded Jones attorney's fees for the time billed for the work of an unnecessary second trial lawyer.

Awards of attorney's fees in age discrimination actions are governed by 29 U.S.C. § 216(b) which provides: "[t]he court ... shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant ...." *See* 29 U.S.C. § 626(b) (rendering section 216(b) applicable to ADEA actions). A number of factors are relevant to the determination whether such an award is reasonable, the most familiar of which were discussed at length in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974).[1]

precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

The *Johnson* court cited the following considerations as being relevant to the determination of the reasonableness of the award:

1) the time and labor required;

■ In this case, the district court based its award on a "lodestar" figure consisting of the product of the time invested by Jones' counsel and an hourly rate. Record, vol. 1, pp. 381–84.[2] In doing so, the district court addressed each of the factors listed in *Johnson* and concluded that no adjustment of the lodestar amount was necessary. *See id.* at 381–86.[3] We may overturn this award only for "clear abuse of discretion." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1187 (11th Cir.1983).

Jones first contends that the lodestar figure should have been increased because of the results obtained in the ADEA action. The district court reasoned that although counsel "achieved substantial relief for the plaintiff in this case, the court does not feel that counsel is entitled to an enhancement bonus on this factor." Record, vol. 1, p. 385.

The Supreme Court of the United States has instructed that "[b]ecause acknowledgment of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee it normally should not provide an independent basis for increasing the fee award." *Blum v. Stenson*, —— U.S. ——, ——, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891, 903 (1984). However, "in some cases of exceptional success an enhanced award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, 52 (1983); *see Blum*, —— U.S. at ——, 104 S.Ct. at 1550, 79 L.Ed.2d at 903 (quoting *Hensley*). We are confronted here with the question whether the result in this case constitutes "exceptional success."

Although the Supreme Court has not yet addressed in detail the circumstances under which an award of attorney's fees should be enhanced because of the result obtained, the Court noted in *Blum* that "where the experience and special skill of the attorney ... require the expenditure of fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue" an increase may be warranted. *Blum*, —— U.S. at ——, 104 S.Ct. at 1549, 79 L.Ed.2d at 902. *See also Ramos v. Lamm*, 713 F.2d 546, 557 (10th Cir.1983)

2) the novelty and difficulty of the questions;
3) the skill requisite to perform the legal service properly;
4) the preclusion of other employment by the attorney due to the acceptance of the case;
5) the customary fee;
6) whether the fee is fixed or contingent;
7) time limitations imposed by the client or the circumstances;
8) the amount involved and the results obtained;
9) the experience, reputation and ability of the attorneys;
10) the "undesirability" of the case;
11) the nature and length of the professional relationship with the client; and
12) awards in similar cases.

*Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974).

*Johnson* dealt with 42 U.S.C. § 2000e–5(k), which permits attorney's fees for the prevailing party in certain Title VII actions. Its reasoning, however, has been applied to awards of attorney's fees under 29 U.S.C. § 216(b). *See, e.g., Morgado v. Birmingham-Jefferson County Civil Defense Corps*, 706 F.2d 1184 (11th Cir.1983) (violation of Equal Pay Act, 29 U.S.C. § 206(d), to which section 216(b) also applies), *cert. denied*, —— U.S. ——, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984). The *Johnson* criteria were also approved by Congress when it passed the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. *See* S.Rep. No. 1011, 94th CONG., 2d SESS. 6 (1976), *reprinted in* [1976] U.S.CODE CONG. & AD.NEWS 5908, 5913. In *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40, 50 n. 7 (1983), a case addressing the reasonableness of an award of attorney's fees under section 1988, the Supreme Court stated that the "standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of [attorney's] fees to a 'prevailing party.'" Accordingly, our inquiry extends beyond just those cases dealing with section 216(b).

2. Neither the number of hours nor the hourly rate applied is at issue in this appeal.

3. Computing a "lodestar" figure first and then adjusting it in light of other considerations is a widely accepted practice. *See, e.g., Blum v. Stenson*, —— U.S. ——, ——, 104 S.Ct. 1541, 1543–44, 79 L.Ed.2d 891, 895–96 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433–435, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40, 50–51 (1983); *Ursic v. Bethlehem Mines*, 719 F.2d 670, 676–77 (3d Cir.1983); *White v. City of Richmond*, 713 F.2d 458, 460–61 (9th Cir.1983); *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir.1983); *Copeland v. Marshall*, 641 F.2d 880, 890–91 (D.C.Cir.1980) (en banc).

("exceptional success" may be based upon extraordinary economies of time given the complexity of the task).

Other courts have articulated additional factors that may justify an enhanced attorney's fee award such as the development of new law furthering important congressional policies, *see Phillips v. Smalley Maintenance Services, Inc.,* 711 F.2d 1524, 1530–31 (11th Cir.1983); *Johnson,* 488 F.2d at 718; *accord Ramos,* 713 F.2d at 557,[4] success achieved under unusually difficult circumstances, *see White v. City of Richmond,* 713 F.2d 458, 462 (9th Cir.1983) (near complete success achieved in face of highly unfavorable law); *Ramos,* 713 F.2d at 557 ("unusually difficult circumstances"),[5] and the size of the award. *See Yates v. Mobile County Personnel Board,* 719 F.2d 1530, 1533 (11th Cir.1983); *Wolf v. Frank,* 555 F.2d 1213, 1218 (5th Cir.1977); *Johnson,* 488 F.2d at 718.[6]

None of these grounds is sufficiently present in this case to compel the conclusion that the district court abused its discretion. There is no indication that the

success of Jones' attorneys was achieved with any special economics of time or under unusually difficult circumstances.[7] Moreover, the case did not establish significant new law furthering an important congressional goal, and the $60,462.42 recovered is not such a substantial amount as to require enhancement.[8]

In *Ramos* the Court of Appeals for the Tenth Circuit observed that "total victory" may constitute "exceptional success." *Ramos,* 713 F.2d at 557. The main thrust of Jones' argument appears to be based precisely on this point. According to Jones, because he prevailed on all his claims he is entitled to an enhanced award of attorney's fees.

We decline, however, to equate "total success" with "exceptional success." Although the Supreme Court in *Hensley* observed that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees," *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943, 76 L.Ed.2d at 54, the Court has

---

4. "Although the Court should consider the amount of damages, or back pay awarded, that consideration should not obviate court scrutiny of the decision's effect on the law." *Johnson v. Georgia Highway Express,* 488 F.2d 714, 718 (5th Cir.1974). The Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, not only "make[s] it possible for non-affluent litigants to obtain legal representation, but to *reward* attorneys whose service has benefited the public interest." *Dowdell v. City of Apopka,* 698 F.2d 1181, 1191 (11th Cir.1983) (emphasis in original). The cost-shifting contemplated by section 1988 is "designed to induce and encourage litigation on the theory that litigants acting as 'private attorneys general' may help to enforce important congressional policies ...." *Id.* at 1189 n. 12.

5. *See also Elser v. I.A.M. National Pension Fund,* 579 F.Supp. 1375, 1381 (C.D.Cal.1984) (No enhancement under 29 U.S.C. § 1132(g) when the "relief obtained by [the] plaintiffs was that due them .... In order to be considered an exceptional result, it would have to be one not thought likely to be achieved.").

6. The fact that a class was benefited, rather than an individual, has been a consideration in the past in calculating an award of attorney's fees. *See, e.g., Morgado v. Birmingham-Jefferson County Civil Defense Corps,* 706 F.2d 1184, 1194 (11th Cir.1983) (not abuse of discretion for dis-

trict court to determine that the case was less difficult because the plaintiff was an individual rather than a class), *cert. denied,* — U.S. —, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984); *Johnson v. Georgia Highway Express,* 488 F.2d 714, 718 (5th Cir.1974). This notion however, appears to have been laid to rest by the Supreme Court of the United States. *See Blum v. Stenson,* — U.S. —, —, 104 S.Ct. 1541, 1549 n. 16, 79 L.Ed.2d 891, 903 n. 16 (1984).

7. For example, the *White* court increased an award of attorney's fees for exceptional success when the plaintiff obtained injunctive relief in spite of its restricted availability under *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The legal obstacles overcome in this case do not compare with those in *White.*

8. Jones contends that the recovery in the ADEA litigation was actually worth over $330,000.00 because of the present value of the pension benefits and reinstatement. We recognize that "fees awarded ... [should] not be reduced because the rights involved may be nonpecuniary in nature," S.Rep. No. 1011, 94th CONG., 2d SESS. 6 (1976), *reprinted in* [1976] U.S.CODE CONG. & AD.NEWS, 5908, 5913. Nonetheless, even accepting this figure, we cannot say that the district court abused its discretion by declining to enhance the award of attorney's fees.

never suggested that complete victory alone requires an enhanced award. Indeed, the Court specifically distinguished "excellent" results from "exceptional" results and instructed that only the latter could justify an increased grant of attorney's fees. *Id.*, 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52. Winning on all claims does not seem to us to be so unusual that it must be deemed "exceptional."

■ Furthermore, the Court in *Hensley* held that, given the vast range of success possible in a civil rights action, a decrease in the lodestar amount is not required simply because the plaintiff failed to win every contention raised in his lawsuit. *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943, 76 L.Ed.2d at 55. We believe the converse follows—just as losing on some claims does not necessarily mandate a decrease in the lodestar figure, neither does winning on all claims demand an increased amount. The central inquiry remains whether the expenditure of counsel's time was reasonable in light of the overall success achieved. *See id.,* 461 U.S. at 436, 103 S.Ct. at 1941, 76 L.Ed.2d at 52.

■ A contrary boilerplate rule that total victory mandates a larger award of attorney's fees would mean that lawyers fortunate enough to attract clients with highly meritorious claims would always be entitled to increased attorney's fees. Statutory entitlements to attorney's fees were not designed to provide windfalls to lawyers. *See, e.g.,* S.Rep. No. 1011, 94th CONG., 2d SESS. 6 (1976), *reprinted in* [1976] U.S.CODE CONG. & AD.NEWS 5908, 5913 (Civil Rights Attorney's Fees Awards Act).

■ This is not to say that the totality of the success is never a relevant factor in determining whether a result is "exceptional." We simply hold that the mere fact that a plaintiff recovered everything he sued for in the underlying litigation does not, by itself, mandate an enhanced award. In an appropriate case, the completeness of the success might be weighed along with the legal and factual hurdles, the economies of time and skill involved, the monetary award and the law created in evaluating whether a result is "exceptional." Because the other influences are not present in this case, we conclude that the district court did not abuse its discretion in declining to enlarge the fee notwithstanding the fact that Jones recovered on all claims.[9]

■ Jones next asserts that the district court erred by not considering the contingency fee arrangement he allegedly had with his counsel. The Supreme Court recently deferred a ruling on whether an upward adjustment of the attorney's fees is authorized because of the risk of nonrecovery. *See Blum,* —— U.S. at ——, 104 S.Ct. at 1550 n. 17, 79 L.Ed.2d at 903 n. 17.[10] It is well established in this circuit, however, that a contingency fee arrangement may justify an increase in an award of attorney's fees. *See, e.g., Hall v. Board of School Commissioners,* 707 F.2d 464 (11th Cir.1983) (per curiam); *Marion v.*

---

9. We express no opinion concerning the relative weight of these factors for determining "exceptional success" nor the degree to which any or all of them must be present to justify the enhancement of an attorney's fee award on the basis of the results obtained. In addition, we express no opinion about the extent, if any, to which these factors are necessarily indistinguishable from the existing *Johnson* criteria. We merely hold that, even if all these factors are valid considerations, the district court did not abuse its discretion in denying an enhanced attorney's fee award on the basis of "exceptional success."

Our opinion does not necessarily foreclose the possibility that in future cases in this circuit an increase in an award of attorney's fees may be justified on the basis of "exceptional success" even when all claims asserted are not successful. *See White v. City of Richmond,* 713 F.2d 458, 461–62 (9th Cir.1983) (enhancement upheld despite minor concessions by plaintiff during settlement negotiations).

10. Justice Brennan wrote separately in *Blum,* however, "to reaffirm ... that Congress has clearly indicated that the risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee." *Blum v. Stenson,* —— U.S. ——, ——, 104 S.Ct. 1541, 1550, 79 L.Ed.2d 891, 904 (1984) (Brennan, J., concurring).

*Barrier,* 694 F.2d 229, 231–32 (11th Cir. 1982) (per curiam); *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.) (en banc), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981).

To decide the issue in this case we must distinguish between two types of risks an attorney may assume in making a fee arrangement. First, an attorney may risk all entitlement to fees by entering into a conventional contingency agreement with his client. Second, although not making his entitlement to fees dependent upon the verdict or judgment, an attorney always assumes the risk that he will not be paid by his client because of indigency. If an attorney is aware, when finalizing his agreement, that his client will be unable to pay, and that the only recourse for collecting his compensation is a statute providing for fee-shifting, then for practical purposes, the attorney would have assumed the risk of nonrecovery if his client does not prevail.

The district court recognized this distinction in reasoning that "[a]lthough adequate compensation was, as a practical matter, probably contingent upon a successful result, the case was not taken on a contingent fee basis .... [C]ounsel is not entitled to an enhancement bonus on this factor." Record, vol. 1, at 385. This quotation is a finding of fact that there was no contingency fee agreement between Jones and his counsel. In addition, the court evidently reasoned that, although there was a "practical risk" of nonpayment because of Jones' indigency, this risk did not justify a fee enhancement.

We may overturn the district court's finding of fact only if it is "clearly erroneous." Fed.R.Civ.P. 52(a). The facts in the record reflect considerable doubt about the fee arrangement between Jones and his

attorney. At an initial meeting between Jones and his attorney in February, 1981, the fee was not discussed. Record, vol. 2, p. 393–7. Later, an hourly bill was sent to Jones. When Jones expressed his inability to pay it, his attorney told him they would "cross that bridge later." *Id.* at 393–9. Several months then passed during which there was no further mention of the fee.[11] *Id.* at 393–9 to 393–10. Jones later authorized his lawyer to settle the case for up to $40,000.00 of which a third would be retained as attorney's fees. *Id.* at 393–12. However, no settlement ever materialized. *After* Jones prevailed at the jury trial, he agreed that his counsel would "look exclusively to the Court for the fixing of a reasonable fee" without disturbing the jury award. *Id.* at 393–13.[12]

■ At no point was it apparent that Jones' counsel agreed to forego compensation for his efforts in the event the action was unsuccessful. Accordingly, we are not left with the requisite "definite and firm conviction" that the district court made a mistake in finding there was no contingency fee arrangement between Jones and his attorney.

■ Moreover, the district court was correct in reasoning that the "practical risk" assumed by Jones' counsel is not a basis for enhancing a fee award. Jones argues that one purpose of fee-shifting statutes is to attract competent counsel and that compensating for the "practical risk" would encourage lawyers to take civil rights cases involving indigent clients. According to Jones, refusing to provide this compensation would have a "chilling effect" on the willingness of attorneys to take such cases.

■ It is true that in passing statutes supporting the entitlement to attorney's

---

11. Counsel for the appellant admitted at this point that the fee situation was "vague." Record, vol. 2, p. 393–12.

12. In addition, we note that in an effort to justify the employment of two trial attorneys, Jones' counsel stated that two lawyers were necessary in light of the fact that Jones could not afford pretrial deposition discovery. Record, vol. 2, p. 393–5. The district court may have

taken this to mean that Jones' ability to pay was so significant an issue before trial that cost-cutting measures were necessary. Such concern over Jones' ability to pay suggests that the parties expected, at least at that point, that Jones would ultimately be liable for his counsel's fees. This liability is inconsistent with a contingency fee arrangement.

fees, Congress intended to encourage competent counsel to take on possibly undesirable cases by providing for adequate compensation for their successful efforts. *See, e.g.,* S.Rep. No. 1011, 94th CONG., 2d SESS. 6 (1976), *reprinted in* [1976] U.S. CODE CONG. & AD.NEWS 5908, 5913 (Civil Rights Attorney's Fees Awards Act). This court has recognized that enhancement on the basis of a conventional contingency arrangement furthers this congressional purpose. *See, e.g., Yates,* 719 F.2d at 1534.[13]

■ We do not believe, however, that Congress intended that such advocates be paid for the financial risks they assume to a greater degree than other lawyers. As we stated in *Jones,* compensation for risk "is neither less nor more appropriate in civil rights litigation than in personal injury cases." *Jones,* 636 F.2d at 1382.

■ In this case, counsel for Jones seek an amount compensating them for the risk of nonpayment by a client liable for fees, a risk that is assumed without special compensation by all attorneys in all cases. A lawyer may not preserve a right of recourse against his client for fees and still expect to be compensated as if he had sacrificed completely his right to payment in the event of an unsuccessful outcome. To justify a risk premium a lawyer must agree to hold his client unaccountable for his fees if he loses the case. Because the district court found that no such agreement existed, the court did not abuse its discretion in refusing to enhance the fee award on the basis of contingency.

Jones' last argument is that the district court abused its discretion by not awarding additional attorney's fees to compensate for delay in payment. This court has recognized that if the hourly rate for attorney's fees is based on historical rates, thus reflecting the reasonable attorney's fee at the time the work was performed, an adjustment may be necessary to compensate for inflation and interest.[14] *See Johnson v. University College of the University of Alabama,* 706 F.2d 1205, 1210–11 (11th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983); *Morgado v. Birmingham-Jefferson County Civil Defense Corps,* 706 F.2d 1184, 1193–94 (11th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984). The district court did not discuss delay, and did not state whether the hourly rate it used to compute Jones' award was current or historical.[15] The evidence the court could have considered in arriving at the applied rate of $85.00 per hour contains information about both current and historical rates.[16] Under these circumstances we

---

13. Vindication of the policy of the law depends to a significant degree on the willingness of highly skilled attorneys, such as those now before the court, to accept employment in discrimination cases on a wholly contingent basis. They will hardly be willing to do so if their potential compensation is limited to the hourly rate to which they would be entitled in noncontingent employment. Busy and successful attorneys simply could not afford to accept contingent employment if those were the rules that were applied. The enforcement of our civil rights acts would then be entrusted largely to less capable and less successful lawyers who lack sufficient employment. Such an arrangement would ill serve policies of enormous national importance.
*Yates v. Mobile County Personnel Board,* 719 F.2d 1530, 1534 (11th Cir.1983).

14. The relevant period of delay generally runs from the time payment for legal services rendered would normally be due to the time of the receipt of the payment. In this case, however, the relevant period may be somewhat shorter because the district court awarded interest from the date of its order granting attorney's fees to Jones. Record, vol. 1, p. 387.

15. The district court's order stated that "$85.00 per hour for time expended on the merits of the case is a reasonable fee for [Jones] in accordance with the customary hourly fee charged for this type of litigation." Record, vol. 1, p. 384.

16. The district court stated that it based its hourly rate figure on 1) the affidavit of Champs Lyons, Jr., one of Jones' attorneys, 2) the testimony at the hearing for the application of the award of attorney's fees, and 3) the Defendant's Response to Post-Judgment Interrogatories. Record, vol. 1, pp. 383–84.

The affidavit was dated February 8, 1983, Record, vol. 1, p. 306, and stated that "when I handle litigated matters on a strictly hourly basis, my regular rate is $95.00 an hour ...." *Id.* at 298. The use of the present tense suggests that the rate was current.

cannot determine whether the district court abused its discretion by failing to increase the award to account for delay.

■ We decline, however, to remand this case for clarification or reconsideration because we hold that Jones waived the right to seek an enhancement of attorney's fees on the basis of delay. He failed both at the district court hearing on attorney's fees and in his "Application for Award of Attorney's Fees," Record, vol. 1, pp. 291–306, to raise the issue of enhancement for delay.[17] In reaching our conclusion we are mindful of the general rule that the "burden rests on the party seeking an attorney's fee award to file a fee application and proffer proof going to the *Johnson* guidelines before the trial court." *Carr v. Blazer Financial Services, Inc.*, 598 F.2d 1368, 1371 (5th Cir.1979). Because Jones did not advance any argument for delay until after the district court's order granting attorney's fees, we decline to consider it as a basis for overturning the award. *See Gates v. Collier*, 616 F.2d 1268, 1278 n. 16 (5th Cir.1980) (suggesting waiver of claim for interest on award of attorney's fees when issue not raised until after the district court made the award), *modified on rehearing*, 636 F.2d 942 (5th Cir.1981) (per curiam).

Finally, Central, as cross-appellant, urges that the district court abused its discretion by not reducing the award by the amount allocated for the allegedly duplicative work performed at trial by a second attorney for Jones. The district court considered the issue and concluded that it was not "unreasonable for the plaintiff to have been represented at trial by two experienced attorneys. The defendant was represented at the trial by house counsel and trial counsel, although house counsel did not participate actively in the litigation." Record, vol. 1, p. 382.

A reduction in a fee "is warranted only if the attorneys are *unreasonably* doing the *same* work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Johnson*, 706 F.2d at 1208 (emphasis in original); *see Ward v. Kelly*, 515 F.2d 908, 912 n. 11 (5th Cir.1975); *Johnson*, 488 F.2d at 717.

■ Except for the fact that both were present at trial, there is no evidence in the record suggesting that Jones' attorneys were doing identical work. Also, there is no indication in the record, aside from the fact that only one lawyer actively participated in the trial for Central, that it was unreasonable for Jones to retain two trial attorneys. Indeed, the record reflects that the lack of opportunity for pretrial preparation by Jones' attorney may have necessitated additional trial counsel. *See* Record, vol. 2, p. 393–5. At any rate, in the absence of any evidence to the contrary, we cannot conclude that the trial judge, who was in the best position to evaluate the reasonableness of the use of two trial at-

The hearing testimony revealed that an initial bill was sent to Jones in June, 1981, reflecting a rate of $80/hour. Record, vol. 2, p. 393–8. This would represent a historical rate, applicable two years before the district court's August 2, 1983, order granting attorney's fees. In addition, two witnesses were asked to state their opinion on the "customary range for hourly fees charged in Mobile in Federal court litigation." *Id.* at 393–41 to 393–44. The answers, apparently indicating current fee ranges, were $60.00–100.00 per hour, and $75.00–100.00 per hour. *Id.* at 393–42, 393–44; *see also id.* at 393–38 ($75.00–$100.00 per hour).

Finally, the Defendant's Response to Post-Judgment Interrogatories replied to a question concerning "the then current hourly rate,"

Record, vol. 1, p. 284, and a question asking for "the customary hourly rate," *id.* at 286, by giving the same answer of $85.00 per hour. *Id.* at 351–52. These last answers suggest that the historical and current rates may be the same.

17. In an affidavit accompanying his request for attorney's fees, counsel for Jones reviewed the *Johnson* factor involving awards in other cases and stated that "reported cases, particularly older ones, should be viewed with circumspection, not only because of the impact of inflation since the date of the services, but also because they typically involve special circumstance[s] unique to the facts of the case." Record, vol. 1, p. 306. Despite the reference to inflation, this statement is insufficient to raise the delay issue.

torneys by Jones, abused his discretion in declining to reduce the fee.

The judgment of the district court is AFFIRMED.