**Leroy BIRL, etc., Plaintiff,**

v.

**Kenneth WALLIS, etc., et al.,
Defendants.**

**Civ. A. No. 83–T–809–N.**

United States District Court,
M.D. Alabama, N.D.

April 30, 1986.

---

Greg Bass, Evergreen Legal Services, Longview, Wash., Abigail Turner, Legal Services Corp. of Alabama, Inc., Mobile, Ala., for plaintiff.

G.R. Trawick, R. Emmett Poundstone, III, Asst. Attys. Gen., Alabama Dept. of Mental Health, Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

In this action, plaintiff Leroy Birl challenges the constitutionality of the procedures used by the Alabama Department of Mental Health to reconfine individuals who have been conditionally released from state mental hospitals after initial involuntary commitments. Defendant Kenneth Wallis is the court-appointed receiver of the Department of Mental Health; defendant Charles A. Fetner is the director of Bryce Hospital, one of the department's residential mental health facilities and the hospital in which Birl was confined. Birl has sued Wallis and Fetner under 42 U.S.C.A. § 1983 and has properly invoked the

court's jurisdiction under 28 U.S.C.A. § 1343.

This action is now before the court for a determination of what procedures should be used by Wallis and Fetner to reconfine Birl should he ever be conditionally released from a state mental hospital pursuant to the Department of Mental Health's trial visit program. On September 4, 1985, this court held that the procedures used to return Birl from trial visit on two previous occasions violate the fourteenth amendment to the U.S. Constitution and gave the parties the opportunity to agree upon new procedures. *Birl v. Wallis*, 619 F.Supp. 481 (M.D.Ala.1985). Wallis and Fetner subsequently made certain changes in the reconfinement policy, but on December 5, 1985, the court found that these changes were insufficient to satisfy the fourteenth amendment and once again directed the parties to agree upon constitutionally acceptable procedures. The parties then agreed, first, that Birl could only be returned from trial visit by order of a probate judge and, second, that a mental health professional must submit a sworn affidavit to the probate judge stating why the individual sought to be reconfined should be returned to the hospital for further evaluation and possibly renewed hospitalization. Because these procedures alone are not constitutionally sufficient and because the parties were unable to agree on any additional procedures, the court now takes it upon itself to fashion procedures that comport with the fourteenth amendment. A hearing was held on the question of what procedures are due on February 5, 1986.

## I.

■ Like other individuals involuntarily civilly committed to a state mental hospital in Alabama, Birl was initially committed pursuant to the procedures and standards set forth in *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974) (three-judge court), and codified in 1975 Ala.Code § 22–52–37. These procedures include notice, a hearing before a probate judge, the right to appear at the hearing, and the right to be represented by appointed counsel. An individual may be committed only if the probate judge finds that the individual meets five criteria: that he is mentally ill, that he poses a real and present threat of substantial harm to himself or others, that the danger has been evidenced by some factual basis, that there is treatment available or that confinement is necessary for the well-being of the community and the individual, and that commitment is the least restrictive alternative necessary and available for treatment of the person's illness. *See generally Lynch v. Baxley, supra;* 1975 Ala.Code § 22–52–37.

Virtually all involuntarily committed patients in Alabama who are ultimately discharged from the hospital are first released on trial visit. A patient placed on trial visit is released to the community with instructions to meet with the staff at a community mental health center at lease once and to continue with previously prescribed medications; although the community mental health centers make some effort to watch over patients on trial visit and to offer any assistance that might be necessary, patients on trial visit have few restraints on their freedom.

Under existing policies, the State Department of Mental Health may return a patient from trial visit and reconfine him within six months of his initial release without going through a new commitment hearing. If the patient is not returned within six months, however, his name is removed from the hospital rolls and he is considered to be unconditionally discharged. The present procedures for trial visit returns are fully described in the court's September 4, 1985, opinion, *Birl v. Wallis, supra;* the only major change since September 4 is that the department must obtain an order from a probate judge before reconfining a patient on trial visit. The department has not issued any guidelines suggesting how a probate judge is to determine whether reconfinement is warranted.

## II.

From the viewpoint of the both the Alabama Department of Mental Health and

the patient's continued treatment, release on trial visit differs dramatically from an unconditional release. According to the testimony of Dr. James Morris, a psychiatrist at Bryce Hospital and Bryce's clinical director, the trial visit program is intended to "test [a patient's] ability to cope outside the institution, ... [to provide] an opportunity ... for him to participate in the after care or follow-up out-patient treatment, [and] to sort of reenforce his stability that's been reached [during hospitalization]." Patients on trial visit are not simply released to the community to fend for themselves; rather, the hospital actively tries to help the patient meet the three goals of maintaining stability, participating in follow-up treatment, and adjusting to life in the community. Before a patient is released, the hospital staff orally explains the trial visit program, sets up an initial appointment for the patient at the local community mental health center, and provides the center with a treatment plan; for patients who appear to be reluctant to comply with follow-up plans, the hospital may make more elaborate arrangements before authorizing the trial visit. Following the trial visit release, the community mental health centers attempt to monitor patients' progress and provide whatever support is necessary. For example, a center may provide a patient with guidance on social problems, such as how to find a job or an apartment, or on medical problems, such as the proper dosage of medication. Evidently, then, patients released on trial visit are eased back into the community and are given the guidance they may need to stay there. The trial visit program thus plays an important part in a patient's treatment. Unlike an outright release, the trial visit program offers a patient a bridge between the hospital and the community and ensures that the progress the patient has made while in the hospital will not be undermined by an abrupt return to the community.

While the trial visit program is designed to provide newly released patients with guidance and support, it is only offered to patients whose conditions have already stabilized to the point that hospitalization is no longer necessary. Dr. Morris testified that patients who are released on trial visit are in remission and are unlikely to be dangerous to themselves or others. Indeed, Dr. Morris agreed that "in so far as [the patients'] mental state is concerned, a trial visit patient and the patient who has completed the six months [and therefore been discharged from the hospital] are really not any different." Similarly, when the court asked whether "once the patient is placed on a trial visit, there's already been a determination, a clinical determination, that the patient can exist outside of the institution and no longer meets the four [sic] requirements for the initial involuntary commitment," Dr. Morris responded, "that's correct."

Birl's condition when he was released on trial visit bears out Dr. Morris's testimony. Notes in Birl's hospital file from just before his first release on trial visit state that "Patient has achieved maximum hospitalization benefit. He exhibits clear mental status"; notes from just before his second visit describe Birl as "oriented, good appearance, no psychosis noted. He is in touch [with] reality, knows right from wrong [and] is fully responsible for all his actions." At the time Birl was initially released on trial visit, therefore, he was in essentially the same condition as individuals who have been completely discharged and who could not be committed involuntarily; the only question to be answered during the trial visit was whether his condition would deteriorate to the point that confinement would once again be warranted.

### III.

The current policy of using relatively casual procedures to return patients from trial visit necessarily rests on the premise that the initial commitment decision provides a sufficient basis for renewed confinement; in other words, the defendants apparently believe that there is no need for new commitment procedures because the patient was already found to be in need of hospitalization as an initial matter.

■ However, it is well established that a patient must be unconditionally re-

leased from involuntary confinement once the grounds for the initial confinement cease to exist. As the Supreme Court has observed, "even if [a state mental patient's] involuntary confinement was initially permissible, it could not constitutionally continue after that basis no longer existed." *O'Connor v. Donaldson,* 422 U.S. 563, 575, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975). In particular, continued confinement is constitutionally unjustifiable when the patient is no longer dangerous. The Supreme Court has suggested that an individual may only be involuntarily hospitalized if he presents a danger to himself or to others, *see Addington v. Texas,* 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979); *O'Connor,* 422 U.S. at 575, 95 S.Ct. at 2493. Other courts have interpreted this to mean that a patient must be released when he ceases to present a danger. *See, e.g., United States v. DeBellis,* 649 F.2d 1, 3 (1st Cir.1981) (involuntarily committed mental patient may only be confined "for so long as he remains dangerous"); *see also United States v. Curry,* 410 F.2d 1372, 1374 (4th Cir.1969). Therefore, when a patient has recovered to the point that his condition no longer satisfies the requirements for an initial commitment and he no longer presents a danger, he must be released.

Based on Dr. Morris's testimony and the notes in Birl's hospital file, it is quite clear that Birl's condition was such that he had the right to an unconditional release at the time he was deemed ready for trial visit. Because he was constitutionally entitled to an unconditional discharge when he was released on trial visit, it is difficult to see how he could be reconfined without being given a completely new commitment hearing. The fact that the Department of Mental Health has found that it can best serve patients by offering them close guidance and support for the first few months after they leave the hospital does not mean that patients lose their right to an unconditional discharge; the hospital's method of treatment cannot eviscerate the patients' constitutional rights. Furthermore, the Department of Mental Health may not justify its present reconfinement procedures by relying on some sort of presumption of continuing mental illness during the six-month trial visit, for the very decision to release a patient on trial visit signifies that the patient has been found to be nondangerous and in remission; in Birl's case, the file notes make clear that a presumption of continuing mental illness would be unwarranted.

■ Finally, the court rejects the notion that the hospital should be free to reconfine a newly released patient at the first sign of trouble so as to prevent either further deterioration in the patient's condition or possible danger to others. An individual may not be involuntarily hospitalized as an initial matter based on a mere expectation of dangerousness, *see Lynch v. Baxley,* 386 F.Supp. at 391, and there appears to be no reason why a return from trial visit based on mere expectations is any more permissible. While the initial release on trial visit and the final discharge at the end of the six-month period differ from the viewpoint of the state's involvement in the patient's treatment, the two are essentially the same from the viewpoint of the patient's constitutional rights. Certainly the hospital could not pick up and reconfine a fully discharged patient without going through initial commitment proceedings once again; nor may it do so with a patient released on trial visit.

## IV.

In its September 4, 1985, opinion, the court stated that the procedures for returns from trial visit should be determined in accordance with the factors articulated in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Birl v. Wallis,* 619 F.Supp. at 491–93. This statement was premised on the court's assumption that either the court or the parties would have to develop different procedures from those required for initial commitments. However, in light of the evidence that a patient has a constitutional right to an unconditional discharge by the time he is released on trial visit, the court concludes that a return from trial visit is equivalent to an initial commitment and

712

therefore finds that the procedures established in *Lynch v. Baxley* for initial commitments should be adopted for trial visit returns as well.

Accordingly, the court concludes that Wallis and Fetner may not return Birl from trial visit again in the future without affording him the procedures used for initial involuntary commitments established in *Lynch v. Baxley* and codified by the Alabama legislature in 1975 Ala.Code § 22–52–37.\*

An appropriate judgment will be entered.

---

\* While the court has analyzed the constitutional rights at stake to reach the conclusion that patients released on trial visit are entitled to new *Lynch* proceedings before they may be reconfined, the language of the Alabama civil commitment statute suggests that such proceedings might be statutorily required as well. By its terms, section 22–52–37 applies to "*[a]ny* civil commitment proceedings," 1975 Ala.Code § 22–52–37(a) (emphasis added), and the section repeatedly refers to the "recommitment" of individuals. 1975 Ala.Code §§ 22–52–37(a)(7)c, (a)(7)e, (b). Since a return from trial visit may well constitute a "recommitment," the statute itself seems to require the result reached by the court.