Leroy BIRL, etc., Plaintiff,

v.

Kenneth WALLIS, etc., et al.,
Defendants.

Civ. A. No. 83–T–809–N.

United States District Court,
M.D. Alabama, N.D.

July 24, 1986.

Greg Bass, Evergreen Legal Services, Longview, Washington, Abigail Turner, Legal Services Corp. of Alabama, Inc., Mobile, Ala., Larry T. Menefee, Blacksher, Menefee & Stein, Birmingham, Ala., for plaintiff.

G.R. Trawick, R. Emmett Poundstone, III, Asst. Attys. Gen., Alabama Dept. of Mental Health, Montgomery, Ala., for defendants Wallis and Fetner.

## ORDER

MYRON H. THOMPSON, District Judge.

This lawsuit challenges the constitutionality of the procedures used by the Alabama Department of Mental Health to reconfine individuals who have been conditionally released from state mental hospitals after initial civil involuntary commitments. The action is now before the court on the May 14, 1986, motion for an award of attorney fees and expenses filed by plaintiff Leroy Birl. Based on the evidence and briefs submitted by the parties, the court concludes that the plaintiff is entitled to attorney fees in the amount of $60,694.20 and expenses in the amount of $3,285.09.

## I.  Background

Birl filed this suit on August 4, 1983, claiming that the reconfinement procedures used by defendants Kenneth Wallis, court-appointed receiver of the Department of Mental Health, and Charles A. Fetner, director of the state mental hospital in which Birl was confined, violated his rights under the fourteenth amendment to the U.S. Constitution. On September 4, 1985, this court held that the existing procedures did violate the fourteenth amendment and directed the parties to attempt to agree on alternative procedures. *Birl v. Wallis (Birl I)*, 619 F.Supp. 481 (M.D.Ala.1985). Wallis and Fetner then filed a motion for a stay pending appeal; the stay was denied by both this court and the 11th Circuit Court of Appeals. The parties subsequently made some progress towards an agreement in response to the court's September 4 order, but they were unable to arrive at a

final settlement of the matter. The court therefore held an evidentiary hearing on February 5, 1986, at which both sides presented expert testimony regarding the proper procedures for reconfinement. On April 30, 1986, the court held that Wallis and Fetner may only reconfine Birl following a conditional release pursuant to the procedures established in *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.) (three-judge court), and 1975 Ala.Code § 22–52–37 for initial involuntary commitments. *Birl v. Wallis (Birl II)*, 633 F.Supp. 707 (M.D.Ala. 1986).

## II.  Attorney Fees

The Civil Rights Attorney's Fees Awards Act, 42 U.S.C.A. § 1988, authorizes courts to award reasonable attorney fees to prevailing civil rights litigants.

Birl is unquestionably the prevailing litigant in this suit. Wallis and Fetner strongly contested both the initial question of whether the existing reconfinement procedures violated the fourteenth amendment and the subsequent question of what alternative procedures would be appropriate. Birl prevailed on both points, for the court found that there was a fourteenth amendment violation, *Birl I*, 619 F.Supp. at 491, and ordered Wallis and Fetner to reconfine Birl pursuant only to precisely the same procedures used for initial commitments rather than the more casual procedures urged by the defendants. *Birl II, supra.* Birl therefore appears to be entitled to an award of attorney fees.

Wallis and Fetner argue that regardless of whether Birl is the prevailing party, an award of fees is precluded by the special circumstances exception. *See Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (attorney fees may be denied where "special circumstances would render such an award unjust"). In specific, Wallis and Fetner contend that a fee award would be inappropriate because they acted in good faith and also because they took prompt remedial action by issuing new confinement proce-

dures after the suit was filed. Wallis and Fetner's position is without merit.

First, the principal decision on which Wallis and Fetner rely, *Martin v. Heckler*, 733 F.2d 1499 (11th Cir.1984), was vacated by the en banc court, and the later opinion made clear that "[d]efendants' good faith, lack of culpability, or prompt remedial action do not warrant a denial of fees under the special circumstances preclusion.... The general concept that governmental defendants will accede to complaints that show clear error in the statutes and regulations under which they operate is not sufficient to bar a fee award, if in fact the litigation was the catalyst necessary to bring about governmental action at the time." *Martin v. Heckler*, 773 F.2d 1145, 1150 (11th Cir.1985) (en banc). Given that the new procedures were not promulgated until after Birl filed this suit, this litigation was clearly the catalyst that led to Wallis and Fetner's action and fees should therefore be awarded.

The special circumstances exception is also inapplicable because the supposed remedial measures were completely insignificant. Even after the new confinement procedures were promulgated, patients were routinely returned to the hospital from trial visits with virtually no due process protections; despite Wallis and Fetner's "remedial actions," Birl was forced to go forward with this entire litigation in order to vindicate his rights. Defendants must make a " 'strong showing' to justify denial of section 1988 fees to prevailing plaintiffs," *Martin*, 773 F.2d at 1150, and the court concludes that in this case no such showing has been made.

As the prevailing litigant, Birl is entitled to an award of "reasonable" attorney fees. The court will determine what constitutes a reasonable fee in accordance with the 12 factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the clients; and (12) awards in similar cases. The court is also guided by the recent Supreme Court decisions of *City of Riverside v. Santos Rivera*, —— U.S. ——, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); and *Hensley v. Eckerhart, supra.*

In *City of Riverside, Blum,* and *Hensley*, the Court observed that the number of hours reasonably expended to prosecute the lawsuit and the prevailing market rate provide an important starting point for any fee determination. *City of Riverside*, —— U.S. ——, 106 S.Ct. at 2691; *Blum*, 465 U.S. at 897 & n. 14, 104 S.Ct. at 1548 & n. 14; *Hensley*, 461 U.S. at 432, 103 S.Ct. at 1939. In making its fee award, the court will therefore start by determining: (a) the number of hours reasonably devoted to this litigation; and (b) the prevailing market rate for non-contingent work performed by similarly situated attorneys in similar cases in the community. The product of these two figures will provide the court with a "lodestar" figure. The court will then determine whether, based on additional factors, any portion of this lodestar fee should be adjusted upwards or downwards. Such an approach has been approved in *Jones v. Central Soya Co., Inc.*, 748 F.2d 586, 589 & n. 3 (11th Cir.1984).

A. Reasonable Hours

Birl was primarily represented by Abigail Turner and Greg Bass, of the Legal Services Corporation of Alabama.[1] Turner, who served as lead counsel, claims 254.26 hours and Bass claims 167.68 hours. Sole-

---

1. In the course of this litigation, Bass moved to Washington State and is therefore no longer employed by the Legal Services Corporation of Alabama.

ly for the fee petition, Birl was also represented by Larry Menefee, who claims 9.8 hours.

The court has considered two *Johnson* factors—the novelty and difficulty of the case, and the amount involved and the result obtained—in assessing the reasonableness of the hours claimed.[2] While the general issues involved in this case were not particularly novel, it is one of the few suits nationwide to deal 'with the proper procedures for reconfinements rather than initial confinements and thus at least extended established principles to a new context. Furthermore, although the legal questions may not have been unusually difficult, representation of a client such as Birl, who is mentally unstable and was hospitalized during part of this litigation, in itself presents special problems. Compared to a client who is fully competent, a client such as Birl may be less able to assist in discovery and trial preparation and, as Turner stated in her affidavit, requires more frequent counseling.

Birl's attorneys obtained exceptionally successful results in that Wallis and Fetner are now required to follow stringent procedures before reconfining Birl. Moreover, although this was not a class action, the results obtained by Birl's attorneys clearly benefit other state mental patients. *City of Riverside*, —— U.S. at ——, 106 S.Ct. at 2696 (attorney fee award in civil rights case should reflect not only specific individual relief obtained but also any broad social benefit that may indirectly result from litigation). Based on the two *Johnson* factors of novelty and results obtained, the court finds that as a general matter, the claimed hours are reasonable.

The court's conclusion that the hours are reasonable is supported by its examination of the time sheets listing the hours claimed by each of the attorneys. There does not appear to be any unnecessary duplication of efforts among the attorneys, and all of the hours listed appear to be directly related to this particular litigation. Further-

more, both Turner and Bass stated in their affidavits that they exercised "billing judgment" and omitted from their claims hours that might have been seen as unreasonable. The court therefore concludes that Turner, Bass, and Menefee are all entitled to the full number of hours they claimed.

### B. Prevailing Market Rate

To determine the prevailing market rate, the court will consider the following *Johnson* factors: customary fee; skill required to perform the legal services properly; the experience, reputation and ability of the attorneys; time limitations; preclusion of other employment; undesirability of the case; nature and length of professional relationship with the clients; and awards in similar cases.

*Customary Fee.* The plaintiffs contend that fees of $100 per hour for Turner, $85 per hour for Bass, and $120 per hour for Menefee would comport with the customary fees for attorneys of similar experience in this community. The evidence shows that in the Montgomery area, attorneys with approximately the same experience as Turner and Menefee charge hourly fees between $75 and $150, and attorneys with approximately the same experience as Bass charge in the neighborhood of $85.

*Skill Required to Perform the Legal Services Properly.* The work product of plaintiff's attorneys demonstrates a high degree of skill in complex civil rights litigation.

*Experience, Reputation, and Ability of the Attorneys.* Turner has been practicing for over ten years, Bass has been practicing for over five years, and Menefee has been practicing for fifteen years. Each enjoys a well-deserved reputation for civil rights advocacy of the highest order.

*Time Limitations.* This factor requires "some premium" where there has been "[p]riority work that delays the lawyer's other legal work." *Johnson*, 488 F.2d at 718. There is no evidence of such limitations here.

---

**2.** The initial calculation of reasonable hours at the prevailing market rate will often subsume

many of the *Johnson* factors. *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.

Preclusion of Other Employment. This factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson,* 488 F.2d at 718. There is no significant evidence of such preclusion here.

Undesirability of the Case. In general, civil rights litigation is seen as undesirable because it stigmatizes an attorney as a "civil rights lawyer" and thus tends to deter fee-paying clients from seeking assistance from that lawyer. *See York v. Alabama State Bd. of Education,* 631 F.Supp. 78, 85 (M.D.Ala.1986). This particular case could be seen as especially undesirable because of the various difficulties that may arise in working with a mentally unstable client and also because Birl is hardly the kind of client who may be in a position to generate new fee-paying work in the future for these attorneys.

Nature and Length of Relationship with Clients. Bass represented Birl since the litigation began until approximately July 1984; Turner has represented Birl since approximately April 1984.

Awards in Similar Cases. This court has awarded fees in the range of $100 per hour in other civil rights cases. *See, e.g., York v. Alabama State Board of Education, supra; Zakrzewski v. Alabama State Council,* No. 85–T–512–N (M.D.Ala. April 28, 1986) [Available on WESTLAW, DCTU database].

Based on these criteria, the court is of the opinion that the following hourly fees for plaintiff's counsel reasonably reflect the prevailing market rate for non-contingent work performed by attorneys of similar experience in similar cases:

Turner .......... $100/hour
Bass ............. $ 85/hour
Menefee ......... $120/hour

## C. Lodestar Calculation

The unadjusted lodestar figure for each attorney consists of the product of the attorney's compensable time times his or her prevailing market fee. The lodestar figures for each of the attorneys is as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Turner | 254.26 | $100 | $25,426.00 |
| Bass | 167.68 | 85 | 14,252.80 |
| Menefee | 9.80 | 120 | 1,176.00 |

## D. Adjustment

Birl's attorneys seek a 50% upward adjustment of the lodestar figures. For the reasons stated below, the court concludes that such an adjustment is proper for Turner and Bass but not for Menefee.

Although the Supreme Court has deferred ruling on whether "the risk of not being a prevailing party ... and therefore not being entitled to attorney's fees from one's adversary, may ever justify an upward fee adjustment," *Blum* 465 U.S. at 901 n. 17, 104 S.Ct. at 1550 n. 17, "[i]t is well established in [the Eleventh Circuit] ... that a contingency fee arrangement may justify an increase in an award of attorney's fees." *Jones v. Central Soya Co., Inc.,* 748 F.2d at 591; *see also Blum,* 465 U.S. at 900, 104 S.Ct. at 1550 (Brennan, J., concurring) ("Congress has clearly indicated that the risk of not prevailing ... is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee"). The purpose of an upward adjustment based on contingency is to place civil rights attorneys, whose payment is contingent upon success, in the same position as other attorneys. "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.1981) (en banc). This "risk premium" is "intended to encourage competent counsel to take on possibly undesirable cases by providing for adequate compensation for their successful efforts." *Jones v. Central Soya Co., Inc.,* 748 F.2d at 593. *See also Yates v. Mobile*

*County Personnel Bd.,* 719 F.2d 1530 (11th Cir.1983).

While the Eleventh Circuit has rejected the contention that there must be an enhancement in every case in which the fee is contingent, *Yates,* 719 F.2d at 1534, the upward adjustment for contingency should be the norm rather than the exception. "When the attorney fee is contingent upon success, the hourly rate should ordinarily be raised to compensate the attorney for the risk of nonrecovery." *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, at 1138 (11th Cir.1984).

■ In order to obtain an upward adjustment, the attorney and client must have actually agreed that the client would only be liable for fees if the attorney prevailed. *Jones v. Central Soya, Inc.,* 748 F.2d at 593. In addition, the court must determine whether the legal and factual difficulties of the particular case were such that the attorney faced a realistic risk of nonpayment by taking the case on a contingent basis. *See generally Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 613 (1st Cir.1985) (actual risks borne by attorneys should determine whether an upward adjustment is called for, not the mere fact that the case was taken on a contingent basis). *See also Blum,* 465 U.S. at 902, 104 S.Ct. at 1551 (Brennan, J., concurring) ("Congress authorized district courts to award upward adjustments to compensate for the contingent nature of success, and thus for the risk of nonpayment in a particular case"); A. Miller, *Attorney's Fees in Class Actions* at 373–374 (Federal Judicial Center 1980) (contingency consideration should be limited to the risks involved in each particular case). This rule furthers Congressional intent by ensuring that attorney fee awards, while attracting competent counsel, do not create huge windfalls for civil rights attorneys. *Duncan v. Polythress,* 777 F.2d 1508, 1513 nn. 15 & 16 (11th Cir.1985).

■ The issues and legal theories involved in this litigation were not entirely novel. On the other hand, the issues and legal theories were not so well settled that liability was clear from the outset; Birl's attorneys clearly faced some degree of risk in taking this case. First, even though liability was decided on a motion for summary judgment, the facts were fairly complex; Birl's success with his summary judgment motion shows not that the facts and issues were unassailably straightforward but rather that Birl's attorneys were skilled enough to develop a persuasive record. Furthermore, particularly since there was no significant precedent on point, there was clearly some question as to the extent of a patient's fourteenth amendment rights when that patient has already been involuntarily committed and was only released on a conditional basis. Finally, Wallis and Fetner contested Birl's summary judgment motion vigorously, filing a summary judgment motion of their own and immediately appealing the court's grant of Birl's motion. The court therefore concludes that Birl's attorneys did face a risk of not prevailing, and that this risk was sufficiently serious to warrant an upward adjustment of 50%. Because Menefee's involvement in this action was limited to the filing of the fee petition, however, the adjustment will only apply to Turner's and Bass's fees. With the 50% adjustment, the attorney fees are as follows:

| Attorney | Unadjusted Fee | 50% Adjustment | Total |
|---|---|---|---|
| Turner | $25,426.00 | $12,713.00 | $38,139.00 |
| Bass | $14,252.80 | $ 7,126.40 | $21,379.20 |
| Menefee | $ 1,176.00 | —— | $ 1,176.00 |
| Total Fees: | | | $60,694.20 |

## III. Expenses

■ In addition to fees, Birl's attorneys seek an award of $3,285.09 for expenses. This sum includes expenses for paralegals, travel, photocopying, long distance telephone calls, and postage. All of the expenses claimed appear to be reasonable and necessary. Moreover, Birl's attorneys have again exercised "billing judgment" and excluded certain items altogether in their request for expenses. Accordingly, the court concludes that Birl's attorneys may recover the full amount of the expenses they claim. *See generally Dowdell v. City of Apopka,* 698 F.2d 1181, 1188–92 (11th Cir.1983).

### IV. Conclusion

For the reasons set forth above, it is ORDERED that plaintiff Leroy Birl's May 14, 1986, motion for attorney fees and expenses be and it is hereby granted; and that plaintiff Birl have and recover from the defendants the sum of sixty-three thousand nine hundred seventy-nine and 29/100 Dollars ($63,979.29) as attorney fees and expenses.