James **CHERRY**; Tom Leake; Dana S. Roberts; Andy Wilkins; Clarence Ward; Curtis Adams; Henry Aikens; Michael Garvey; and all others similarly situated, Plaintiffs,

v.

**ROCKDALE COUNTY**; David Farmer, Chief Jailer, Rockdale County Jail, Defendants.

Civ. A. No. C83–1466A.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 20, 1984.

Ralph Goldberg, Atlanta, Ga., Bensonetta Tipton Lane, College Park, Ga., for plaintiffs.

Sidney L. Nation, Conyers, Ga., Marion O. Gordon, John C. Walden, Sr. Asst. Attys. Gen., William Davis Hewitt, Staff Asst. Atty. Gen., and Michael J. Bowers, Atty. Gen., Atlanta, Ga., for defendants.

## ORDER OF THE COURT

FORRESTER, District Judge.

This civil rights case challenging the conditions of confinement at the Rockdale County Jail is before the court for determination of attorney's fees. For the reasons set out below, the court feels that it is not in a position to rule on the application and gives leave to the parties to amend their petitions.

Counsel for the plaintiffs have submitted a very detailed itemization of time spent and have submitted a very helpful brief in support of their application. The papers are deficient in only two regards. First, the application does not clearly set out enough information on the results obtained. The court is fairly certain that plaintiffs did not prevail on each and every claim raised in the original complaint. Second, the application asks for an enhancement of any award on account of the fact that the fee arrangement that counsel had with their clients was contingent.

■ Both under *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) and also under *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the court must take into account the results obtained in calculating the appropriate fee award under 42 U.S.C. § 1988. It is clear from *Hensley* that the court should not generally award fees for work done on unsuccessful claims. Plaintiffs have made no effort that the court can discern to prorate the time spent between the successful and unsuccessful claims. Such pro ration should be addressed by plaintiffs' counsel in their supplemental petition.

Further, as suggested above, the plaintiffs' counsel are entitled to fees only for what was achieved by their work. Rockdale County contends that some of the changes that are now being made and some of the things that they agreed to in the consent order were in the planning stages or underway before suit was filed. This averment in Rockdale County's pleadings is not, however, supported by affidavit, deposition, or otherwise as is required by the Local Rules of the Court. If the County wishes the court to take those allegations seriously, it should in a supplemental response document its factual contentions.

■ The plaintiffs' counsel also seek a 50% enhancement of any fee awarded. It seems clear to the court that this is not one of those "rare" cases which deserves enhancement because the quality of service rendered was superior to that one reasonably should expect in light of the hourly rate charged or because the success obtained was exceptional. *Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Accordingly, the only cogent reason argued by the plaintiffs' counsel for enhancement is the contingent nature of the fee. Several courts have suggested that this is a basis for enhancement. *E.g., Johnson, supra; Jones v. Diamond*, 636 F.2d 1364 (5th Cir.1981).

Contingent fee arrangements have a legitimate place in our society. The object of contingent fee arrangements (whether the fee comes out of the award or from the

opposing party) is to make lawyers available in sufficient number so as to guarantee meaningful access to the courts for citizens who are in genuine need of legal assistance who cannot pay legal fees in advance or as they are incurred. It seems to the court that the plaintiffs' civil rights bar is probably almost solely dependent on such fee arrangements. If their natural constituency is to have representation, the financial rewards must be sufficient to attract capable attorneys into that field. It seems to the court, however, that, like justifying an upward adjustment based on the quality of service rendered or the results obtained, such an award can only be made on the basis of specific evidence. *Blum, supra,* 104 S.Ct. at 1549. As Justice Powell noted in *Blum,* the legislative history of 42 U.S.C. § 1988 explains that Congress intended a reasonable fee which would attract competent counsel but not produce a windfall to attorneys. *Blum, supra,* 104 S.Ct. at 1548.

■ It is often said that the reason for a contingent fee enhancement factor is that the lawyer with such an arrangement is taking the risk that all of his efforts might come to naught. Of course, a free economy does compensate a risk-taker. The court suggests, however, that at least for these purposes an enhancement is justified only if it is needed to get overall compensation of attorneys representing the affected class to a sufficient level to attract capable advocates. Since there is no evidence before the court on what that level might be, the court does not believe that there is a sufficient evidentiary basis to assume that enhancement is necessary.

The court realizes that some other judges have used multipliers as high as three and four times the hourly rate found reasonable by the court. It is the court's opinion that such figures are absolutely without rational quantifiable foundation.

By way of illustration only, consider the following. Mr. Goldberg, one of plaintiffs' counsel, was admitted to practice in 1975 and Ms. Lane, the other plaintiffs' counsel, was admitted in 1976. According to a national survey proffered to the court in another case, if these two attorneys were compensated at the upper quartile rate paid partners admitted to practice in the same years, they would earn respectively $89,800 and $77,800 per annum. If each was compensated at the upper quartile rate for associates with similar seniority, they would earn, respectively, $61,300 and $56,800 per annum. These rates, presumably, are sufficient to attract capable attorneys. The same survey would suggest that practitioners in small firms have an average overhead of about $47,000 per attorney. A reasonably diligent attorney has available about 2,000 hours per year to do fee-producing work (50 weeks times 40 hours per week).

Affidavits offered by plaintiffs suggest that $100 per hour is a reasonable hourly rate for these attorneys.[1] The table below illustrates the annualized income for an attorney based on different enhancement presumptions. The incomes are shown as a function of a one-third and one-half loss rate. The loss rate assumes that because of the vagaries of the practice, the attorney will be unsuccessful in obtaining compensation for one-third or one-half of his potential billable hours.

---

1. The affidavits are supplied by two attorneys whose principal practice may be plaintiffs' work. It may be, therefore, that the rates quoted are adjusted, consciously or unconsciously, for the contingent nature of fee recovery in other work. A better bench mark might be the fees customarily charged by lawyers of equal experience who principally work on hourly rates and have good collection rates.

ANNUALIZED INCOME BASED ON DIFFERENT RATES OF ENHANCEMENT
AND DIFFERENT RATES OF SUCCESS ASSUMING
A RATE OF $100 PER HOUR

| Potential Hours Lost | No Enhancement | 50% Enhancement | 100% Enhancement | Enhancement Multiple × 3 | Enhancement Multiple × 4 |
|---|---|---|---|---|---|
| 1/3 Loss Rate | $85,000 | $151,000 | $217,000 | $349,000 | $481,000 |
| 1/2 Loss Rate | $53,000 | $103,000 | $153,000 | $253,000 | $353,000 |

From this chart it can be seen that if the loss rate for the average capable civil rights lawyer is one-third of his potential billable hours, then his annualized income based on a rate of $100 per hour would be in line with the earnings of the top 25% of the lawyers with years of experience similar to that of plaintiffs' counsel. If, on the other hand, the loss rate was higher, then some enhancement might be needed if counsel were a partner and not an associate. Under either loss rate assumption, a 50% enhancement begins being a windfall, and an enhancement at the four multiple rate might very well produce a shift in legal specialties which might be visually akin to the California gold rush.

The court does not mean to suggest any more by the above analysis than that the question of whether to enhance because of the contingent nature of the fee and if so, how much, cannot be fairly decided by a court's merely taking a stab in the dark. The court understands that it might not have thought of all of the factors which come into play, and it realizes that there is no evidentiary basis for its assumption that a loss rate of between one-third and one-half is a reasonable expectation for capable attorneys. Further, the statistics relied on, of course, are not in evidence in this case, and neither side has had an opportunity to validate them. The court does mean to suggest, however, that absent some data which will put quantifiable parameters on enhancement multiples, the court will not grant any enhancement.

In addition to a request for attorney's fees, plaintiffs' counsel seek to recover costs for secretarial services, photocopying, postage and long distance telephone calls. The law in this circuit is that a civil rights attorney may obtain all costs and expenses with the exception of routine office overhead normally absorbed by the practicing attorney. *Dowdell v. City Apopka*, 698 F.2d 1181 (11th Cir.1983). It is not clear to the court that expenses of the types just listed should not be routinely absorbed in office overhead. *Dowdell, supra,* seems to assume that such costs are recoverable. *Id.* at 1191. The *Dowdell* court relies for that proposition on *Miller v. Carson*, 628 F.2d 346 (5th Cir.1980), where that panel found no abuse of discretion in the district court's awarding expenses for such items. The decision in part relies upon the case of *Cole v. Tuttle*, 462 F.Supp. 1016 (N.D.Miss.1978). Contrary to the findings in the two appellate decisions which trace their origin to the district court decision, Judge Smith did not allow the plaintiff to recover for postage, clerical, or typing services or certain reproduction costs because the judge considered these to be overhead in the operation of a law office.

Actually, it seems to this court that the recoverability of these items ought to be determined more by reference to fact than to precedent. Plaintiffs rely upon customary fees in the area to establish a prevailing rate for an award of attorney's fees. The attorney's fee award in every case obviously anticipates that the attorney will have to pay for some overhead out of the award. It seems to the court that counsel for the plaintiffs are obliged to demonstrate whether the attorneys whose fees are being relied upon separately bill their clients for the kinds of things for which recovery is sought before such expenses may be recovered. Otherwise, there is a

possibility that plaintiffs could obtain double recovery of costs.

### Conclusion

Both parties are permitted thirty (30) days in which to file supplemental pleadings addressing the concerns raised in this order. Both parties will be allowed fifteen (15) days in which to reply to any supplement filed by the opposing party. Thereafter, the Clerk shall promptly resubmit the matter for decision by the court.