Kristy Bryant **YULE,** as Temporary Administrator of the Estate of Michael Bryant, John Drake, Becky Kelley and Herbert Lowe, Plaintiffs,

v.

Vernon **JONES,** Marilyn Boyd Drew, Morris Williams, Richard Stogner, in their individual capacities, and De-Kalb County, Georgia, Defendants.

No. 1:04–CV–2462–WSD.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 21, 2010.

James L. Hollis, John Thomas Morgan, III, Michael J. Bowers, Christopher Scott Anulewicz, K. Alex Khoury, Balch & Bingham, Joshua Barrett Belinfante, Robbins Law, LLC, Atlanta, GA, for Plaintiffs.

Brent L. Wilson, Sharon P. Morgan, Elarbee Thompson Sapp & Wilson, LLP, Dwight Lowell Thomas, Office of Dwight L. Thomas, Robert B. Remar, Kerri Anne Gildow, Rogers & Hardin, Atlanta, GA, Scott R. Sausser, Law Office of Scott R. Sausser, Sharpsburg, GA, for Defendants.

## OPINION AND ORDER

WILLIAM S. DUFFEY, JR., District Judge.

This matter is before the Court on Plaintiffs' Motion for Attorneys' Fees and Expenses [474] and Plaintiffs' Motion for Sanctions [451].

## I. INTRODUCTION

This case was filed on August 24, 2004. The case, after a long and acrimonious history, finally was tried before a jury, which announced its verdict on April 1, 2010. The delay of the processing of the case in this Court was substantially attributable to the Defendants' "circle the wagon" approach to the claims asserted by the Plaintiffs. Employing a formidable arsenal of litigating tactics, these public-sector Defendants calculatingly and unnecessarily complicated the litigation of these claims, the very nature of which were hard to prove because the claims alleged involved discrimination policies conceived and designed behind closed doors. Ultimately, the prosecution of the claims asserted in this action disclosed that DeKalb County and its most senior officials engaged in an intentional and successful scheme to enact a policy of purposeful discrimination in the county, as manifested in the county's Parks and Recreation department. That a purposeful policy of discrimination was put into place was disclosed by the evidence introduced at trial and was supported by the verdict of the jury, which held unequivocally that DeKalb County, its Chief Executive Officer, Vernon Jones, his Chief of Staff, Richard Stogner, and the head of the Parks and Recreation Department, Marilyn Boyd Drew, engaged in discrimination and did so intentionally. The verdict was punctuated by the jury's award of punitive damages—an award uncommon in this district—against Defendants Jones, Stogner and Drew. The award of punitive damages made it clear that the denial of Mr. Bryant's and Mr. Drake's rights was enacted by the county's most senior executive and implemented by his right-hand administrators. They were responsible for

a policy that became embedded in the political subdivision that employed Mr. Bryant and Mr. Drake and where they were entitled to be treated fairly and without discrimination.

## II. BACKGROUND

This case was litigated over a prolonged period. The litigation has been difficult to manage and has been delayed by the litigation strategy implemented by the Defendants. When the case commenced, each Defendant was separately represented by litigation counsel. None of the Defendants was represented by the county attorney, who routinely appears in cases in this court to represent the county and its employees in discrimination cases. Four law firms appeared on behalf of Mr. Jones and DeKalb County. Individual Defendants Drew and Morris were represented by three law firms. The remaining two individual Defendants were represented by two law firms.

The number of lawyers involved in the case enabled the Defendants to engage in aggressive discovery and motion practice. The written discovery filed by Defendants exceeded fifty (50) pleadings.[1] Each Defendant litigated the action as an independent action against him or her, resulting in defenses that were uncoordinated and disjointed. As time moved on and it became evident the cases would go forward to trial, the Defendants coordinated their litigating positions and, by the time of the trial, DeKalb County and Defendants Drew, Stogner, and Williams were represented by lawyers from Rogers & Hardin, a high-end law firm headquartered in At-

lanta. Defendant Jones was represented separately by two law firms: Elarbee, Thompson, Sapp & Wilson, a high-end Atlanta labor law firm, and the Law Office of Dwight L. Thomas, known for its representation of high-profile clients.

That the Defendants' litigation activity was unusually inefficient and delay-causing was evidenced by the Defendants' summary judgment strategy. The Defendants chose to file fourteen (14) separate motions for summary judgment. Defendants claimed they each were entitled to file a separate summary judgment motion with respect to the claims asserted by each of the Plaintiffs. The Court, once these motions were filed and recognizing the overlapping arguments that were made and the delay and burden this pleading approach would have on a case based on a core set of facts and an alleged county-wide policy of discrimination, directed the parties to file consolidated summary judgment motions, expanding the page limit on the pleadings allowed by the Court's local rules. This produced a manageable set of submissions. While the pleadings, which ultimately were filed, were manageable, this does not diminish the complexity of the summary judgment motions and the enormous work and effort required to litigate them.[2] The Court's Order on the summary judgment motions exceeded 120 pages and stands as the longest order the Court has issued. The result of the Defendants' pleading strategy was to unnecessarily make the case less efficient to manage, which ultimately made the case exceptionally expensive to litigate.

1. The Plaintiffs filed ten (10) original requests and later five (5) additional requests, after the Court allowed discovery to be reopened as a result of Defendants resisting the production of responsive, discoverable information.

2. The Court denied each Defendant's motion for summary judgment based on the immunity claimed by the Defendants. The Court of Appeals affirmed the Court's decision except it found Defendant Stogner was entitled to legislative immunity on a limited issued regarding one Defendant's job reassignment.

There are other examples of how the defense strategy made the litigation of this case more expensive and less efficient. After the Eleventh Circuit affirmed the Court's summary judgment order in its own 60–page published opinion, Defendants elected to file a petition for *writ of certiorari* with the United States Supreme Court. An unusual litigation decision in a case such as this one was made more unusual by the weak grounds upon which the writ was requested—an observation the Court made to the parties in its February 18, 2010, telephone conference. The Supreme Court, as expected, denied the Defendants' petition. That Defendants elected to pursue a questionable *writ of certiorari* illustrated the extraneous litigation activity that was recurrent in this action.

Finally, at the trial itself, the Defendants' litigation decisions made the trial more complicated and inefficient.[3] During the trial, the Court had to address matters about the completeness of Defendants' discovery, specifically Defendants' failure to produce certain reprimand letters given to Defendants Morris and DeKalb County's Human Resources director, Joe Stone, who had been dismissed from the case but who was a key trial witness.[4]

The verdict in this case was returned on April 1, 2010. While there was an actual damage award to only two of the four Plaintiffs, and that award was in the modest amount of $74,000, what is significant and noteworthy is that DeKalb County, Defendant Jones, Defendant Richard Stogner and Defendant Drew, who headed the department in which Plaintiffs Drake and Bryant worked, all were found to have discriminated against Plaintiffs Drake and Bryant. More significant is that an award of punitive damages was awarded against Defendants Jones, Stogner, and Drew for their willful and intentional discrimination against the county employee Plaintiffs who suffered from the Defendants' discrimination. This case was tried on a theory, which the evidence supported, that Defendants Jones, Stogner, and Drew had participated in a covert effort to enact a county-wide policy of discrimination. The policy was employed in the Parks and Recreation Department and Plaintiffs Drake and Bryant were victims of it. The evidence clearly supported that this policy of discrimination had been enacted in DeKalb County by Defendants

3. An example of the odd litigating decisions made by the Defendants occurred during opening arguments. Counsel for Defendant Jones for some reason chose to state that a member of the venire, a white male, was the former DeKalb County Attorney, stating: *"Ask yourselves why, if Mr. Jones is this great architect of racial discrimination against white people, would he assign his number one responsibilities to Richard Stogner, a white man? Why would he appoint a white director of Public Safety? Why would he appoint a white fire chief? Why would he appoint one of your jury venire members, Bill Linkous, the county attorney?"* This inappropriate comment, which appeared to be calculated to show jurors that the former county attorney was a white male, caused Plaintiff's counsel to object and the Court, in response, admonished the jury that they should disregard counsel's reference to the panel member in his opening statement. The next day Defendant Jones' other lawyer moved for a mistrial based on the Court's comments about Defendant Jones' first counsel's improper comment to the jury and the Court's limiting instruction to the jury. The motion was denied.

4. An ancillary issue involving Mr. Stone and his conduct arose at trial that caused the Court to interrupt the trial to allow the parties to conduct discovery on the issue that arose. This further prolonged and complicated the trial, making the litigation more expensive. The matter that was investigated has been sealed and is relevant only to show the unusual litigation activity that occurred in this case which extended the time and expense of this matter.

Jones, Stogner, and Drew. This Court's evaluation of an award of attorneys' fees necessarily is considered against the evidentiary backdrop which showed that De-Kalb County's most senior elected official, his principal lieutenants, and a senior county manager designed and put into effect a policy that violated the constitutional rights of Plaintiffs Drake and Bryant, a policy which convinced the jury that Defendants Jones, Stogner, Drew, and De-Kalb County were liable for violating Plaintiffs Bryant's and Drake's constitutional rights.

Defendants open their opposition to Plaintiffs' Motion for Attorneys' fees and Expenses with the following characterization:

> Plaintiffs' motion for attorneys' fees and expenses asks the Court to do what the jury refused to do: award them over $2 million in damages in the guise of attorneys' fees. Plaintiffs' brief is a grab bag of overblown rhetoric, baseless accusations, distortions of the record and patently meritless assertions.

(Def. Initial Brief in Opp. to Pls.' Mot. for Att'y Fees and Exp. 1.) This opening, characteristic of Defendants' practiced misdirection in this case,[5] distracts from Defendants' later and reluctant acknowledgement that Plaintiffs Drake and Bryant are entitled to an award of reasonable attorneys' fees in this case pursuant to 42 U.S.C. § 1988. (Def. Initial Brief in Opp. to Pls.' Mot. for Att'y Fees and Exp. 3.) Defendants' Opposition submission seeks to belittle the quality of the verdict rendered against the Defendants and otherwise seeks to deconstruct the verdict and its importance, in arguing that the requested award should be "adjusted substantially downward." (*Id.* at 25.) Defendants self-servingly, and without foundation, assert that Plaintiffs really are seeking fees as an alternative to damages. For this reason, Defendants submit, the fee award requested should be reduced to a fraction of what is requested.[6]

Finally, Defendants contend that the Court should not and cannot consider Defendants' litigation conduct and award attorneys' fees to sanction them for abusive litigation practices. Plaintiffs Drake and Bryant claim they are entitled to attorneys' fees as prevailing parties in the litigation and that the legal services and expenses they incurred were necessary to prove their case which was based on a central, unified theory focused on a common core of facts showing that a policy of discrimination was designed and enacted by DeKalb County and its senior leadership.

---

5. The movie *The Prestige* was an examination of the practice of magic tricks. In it, a character by the name of Cutter describes the magic trick process as follows:

"Every great magic trick consists of three parts or acts. The first part is called 'The Pledge.' The magician shows you something ordinary: a deck of cards, a bird or a man. He shows you this object. Perhaps he asks you to inspect it to see if it is indeed real, unaltered, normal. But of course ... it probably isn't. The second act is called 'The Turn.' The magician takes the ordinary something and makes it do something extraordinary. Now you're looking for the secret ... but you won't find it, because of course you're not really looking. You don't really want to know. You want to be fooled. But you wouldn't clap yet. Because making something disappear isn't enough; you have to bring it back. That's why every magic trick has a third act, the hardest part, the part we call 'The Prestige.'" The Court here has to provide the Prestige to Defendants' sleight of hand.

6. Characteristic of Defendants' misleading litigating behavior, they claim the fees and expenses awarded will be put into some aggregate award and divided among the public and the lawyers. There is no reasonable or fair foundation for this comment.

## III. DISCUSSION

■ A party who prevails in an action for wrongful discrimination brought under 42 U.S.C. §§ 1981 or 1983 is entitled to an award of attorneys' fees and expenses. *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Caban–Wheeler v. Elsea*, 71 F.3d 837, 842 (11th Cir.1996). A prevailing party is entitled to an award of attorneys' fees even where the prevailing litigant did not prevail on all of the contentions asserted. *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

### A. *Reasonable Award of Attorneys' Fees*

■ The award of attorneys' fees in this action is governed by the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, as amended, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(k). Section 1988 provides as follows:

In any action or proceeding to enforce a provision of section 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. § 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.], or section 1981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b). Section 2000e–5(k) similarly provides,

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k). These statutes are interpreted broadly since they are remedial in nature and facilitate private enforcement of civil rights. *Williams v. City of Fairburn*, 702 F.2d 973, 976 (11th Cir. 1983). Although awarding attorneys' fees is within the discretion of the trial court, such discretion is a narrow one in that attorneys' fees should be denied only when special circumstances would render an award unjust, *Solomon v. City of Gainesville*, 796 F.2d 1464, 1466 (11th Cir.1986), or the statute is being subverted into a ruse for providing "windfalls" to attorneys. *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir.1983). Importantly, a plaintiff is not required to succeed on all claims in order to be awarded attorneys' fees. *Id.*

■ In *Hensley v. Eckerhart*, 461 U.S. 424, 433–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Blum v. Stenson*, 465 U.S. 886, 896–97, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the United States Supreme Court established the framework and methodology for calculating the amount of a reasonable attorneys' fee award to a prevailing party pursuant to 42 U.S.C. § 1988. The starting point for calculating reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorneys' services. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933; *Blum*, 465 U.S. at 897, 104 S.Ct. 1541; *accord ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999). The product of these two numbers is commonly termed the base figure, or "lodestar." *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 563, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). After calculating the lodestar, the court may, within its discretion, adjust the amount upwards or downwards based on a number

of factors, such as the quality of the results obtained and the legal representation provided. *Blum,* 465 U.S. at 897, 104 S.Ct. 1541; *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir.1996).

■ The fee applicant is the party that "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Barnes,* 168 F.3d at 427 (quoting *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1304 (11th Cir.1988)); *accord Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1252 (11th Cir.2000). That burden includes

> supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.... A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

*Barnes,* 168 F.3d at 427 (citations omitted). These obligations of the fee applicant are especially important in cases where the applicant has only partially succeeded in the suit. *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933.

■ Similarly, those parties opposing fee applications have obligations. Their objections and proof concerning hours they want excluded must be specific and "reasonably precise." *Id.* at 428, 103 S.Ct. 1933. The parties' fulfillment of their respective obligations assists the court in fulfilling its duty to render an order that articulates both its decisions and reasons for the decisions, thus allowing for meaningful appellate review. *Id.* at 428–29, 103

S.Ct. 1933; *see also Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1252 (11th Cir.2000) ("[W]e have said that a court's order on attorneys' fees must allow meaningful appellate review."); *NAACP v. City of Evergreen,* 812 F.2d 1332, 1335 (11th Cir.1987) ("A prerequisite for our review of an attorneys' fee award is that the district court's opinion must have explained the reasons for the award with 'sufficient clarity to enable an appellate court to intelligently review the award.' ").

1. *The "Lodestar"*

a. Reasonable Hours

■ "[A]ll reasonable expenses and hours incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988," *Barnes,* 168 F.3d at 427 (11th Cir.1999) (quoting *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir.1983)), but "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" because, for example, the case is overstaffed. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Work performed by multiple attorneys, however, is not subject to reduction where the attorneys were not unreasonably doing the same work. *Jones v. Central Soya Co.,* 748 F.2d 586, 594 (11th Cir.1984); *Johnson v. University College,* 706 F.2d 1205, 1208 (11th Cir.1983).

■ As to the work performed, compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable

judgment, and even preparing and litigating the request for attorneys' fees. *See City of Riverside v. Rivera*, 477 U.S. 561, 573 n. 6, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (allowing compensation for productive attorney discussions and strategy conferences); *Webb v. Board of Ed.*, 471 U.S. 234, 243, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) (allowing compensation for pre-litigation services in preparation of suit); *Cruz v. Hauck*, 762 F.2d 1230, 1233–34 (5th Cir.1985) (allowing compensation for preparing and litigating fee request); *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir.1985) (holding that measures to enforce judgment are compensable); *New York State Assoc. for Retarded Children v. Carey*, 711 F.2d 1136, 1146 & n. 5 (2d Cir.1983) (allowing compensation for background research and reading in complex cases); *Brewster v. Dukakis*, 544 F.Supp. 1069, 1079 (D.Mass.1982) (compensating for negotiation sessions), aff'd as modified, 786 F.2d 16, 21 (1st Cir.1986); *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1296, 1321, 1348 (E.D.N.Y.1985) (compensating routine activities such as telephone calls or reading mail that contribute to the litigation).

■ Reasonable travel time of the prevailing party's attorneys ordinarily is compensated on an hourly basis, although the rate may be reduced if no legal work was performed during travel. *University College*, 706 F.2d at 1208. As with attorneys' work, the hours expended by paralegals, law clerks, and other paraprofessionals are also compensable to the extent these individuals are engaged in work traditionally performed by an attorney. *Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988). In short, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988," and "the standard of reasonableness is to be given a liberal interpretation." *NAACP v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir.1987) (quoting *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983)).

■ A computation of the hours reasonably expended should not include time spent on "discrete and unsuccessful" claims, *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir.1996), but should include time spent on all claims that arise out of the same course of conduct and share a "common core of fact," even if a specific individual claim did not succeed. *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir.1991); *Jean v. Nelson*, 863 F.2d 759, 771 (11th Cir.1988); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987); *Military Circle Pet Ctr. No. 94 v. Cobb County*, 734 F.Supp. 502, 504 (N.D.Ga.1990). In determining whether claims are related by a common core of fact, the Eleventh Circuit has taken an expansive view. *See Popham*, 820 F.2d at 1579 ("Because plaintiff's counsel is required to 'explore every aspect of the case, develop all the evidence and present it to the court,' courts have expansively treated claims as being related.") (citations omitted). A court also should not discount an attorneys' fee award based on the court's rejection of an alternative legal ground, when one of the grounds is accepted. As the Supreme Court has stated:

Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount

of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

*Hensley,* 461 U.S. at 441, 103 S.Ct. 1933.

### b. Hourly Rates

 The second half of the lodestar calculation is the determination of a "reasonable hourly rate" for the attorney's services. Reasonable hourly rates for the purposes of Section 1988 are to be measured by the "prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Prevailing market rates are those rates that are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Id.* at 895 & n. 11, 104 S.Ct. 1541; *ACLU of Ga. v. Barnes,* 168 F.3d 423, 436 (11th Cir.1999). The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive. *Dillard v. City of Greensboro,* 213 F.3d 1347, 1354–55 (11th Cir.2000) ("What [the attorney] charges clients is powerful, and perhaps the best evidence of his market rate; that is most likely to be what he is paid 'as determined by supply and demand.' "); *see also National Assoc. of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1325 (D.C.Cir.1982) ("The best evidence would

be the hourly rate customarily charged by the affiant himself or by his law firm.").

 A fee applicant also may provide opinion evidence of reasonable rates, which is commonly done by submitting affidavits of other attorneys in the relevant legal community. *Duckworth v. Whisenant,* 97 F.3d 1393, 1396–97 (11th Cir.1996). Finally, the Court may utilize its own personal experiences and expertise to assess the lawyering skills exhibited during the pendency of the case, *see id.* ("This Court has also been given ample opportunity to assess the lawyering of this case for the Plaintiff."), but the Court cannot simply substitute its own judgment for uncontradicted evidence without an explanation and support in the record. *NAACP v. City of Evergreen,* 812 F.2d 1332, 1334, 1336 (11th Cir.1987).

In determining a reasonable hourly rate, the Eleventh Circuit Court of Appeals has provided a list of factors for its district courts to consider. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), *abrogated on other grounds, Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).[7] Although some courts now apply these factors only in determining whether to grant an enhancement to the lodestar, the Supreme Court has stated that these factors usually are subsumed in the lodestar calculation. *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). The Court includes them in its analysis of reasonable hourly rates in this case.[8] *See Farley v. Nationwide Mut. Ins.*

---

**7.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) *(en banc),* the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

**8.** The twelve *Johnson* factors are as follows:
1) the time and labor required;

2) the novelty and difficulty of the questions;
3) the skill requisite to perform the legal service properly;
4) the preclusion of other employment by the attorney due to acceptance of the case;
5) the customary fee;

*Co.,* 197 F.3d 1322, 1340 & n. 7 (11th Cir.1999) ("The [trial] court properly considered the reasonable attorney fee guidelines the former Fifth Circuit outlined in *Johnson* [ ], which we have subsequently adopted for reasonable fee determinations for prevailing parties."); *Norman v. Housing Authority of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988) ("We still believe that at least some of the *Johnson* factors have utility in establishing the hourly rate."); *NAACP v. Evergreen,* 812 F.2d 1332, 1336–37 (11th Cir.1987) (suggesting that *Johnson* factors might still be considered in terms of their influence on the lodestar amount); *Carey v. Rudeseal,* 721 F.Supp. 294, 298–99 (N.D.Ga.1989) ("The Eleventh Circuit has indicated that some of the factors set out in *Johnson* [ ] may still have utility in establishing the hourly rate at which a prevailing attorney should be compensated. This is particularly true where there is an issue as to the appropriate rate.").

### c. Expenses

 "With the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988." *ACLU of Ga. v. Barnes,* 168 F.3d 423, 438 (11th Cir.1999) (quoting *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir.1983)); *see Mallory v. Harkness,* 923 F.Supp. 1546, 1557 (S.D.Fla.1996) ("[B]ecause the Plaintiff has

6) whether the fee is fixed or contingent;
7) time limitations imposed by the client or the circumstances;
8) the amount involved and the results obtained;
9) the experience, reputation and ability of the attorneys;
10) the "undesirability" of the case;
11) the nature and length of the professional relationship with the client;

sought attorneys' fees under 42 U.S.C. § 1988, the traditional limits of 28 U.S.C. § 1920 do not restrict the recovery of costs."). Pursuant to § 1988, a plaintiff may recover all out-of-pocket expenses that "would normally be charged to a fee paying client" and are not "routinely absorbed in office overhead." *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir.1994); *Cleveland Area Bd. of Realtors v. City of Euclid,* 965 F.Supp. 1017, 1023 (N.D.Ohio 1997); *Jane L. v. Bangerter,* 828 F.Supp. 1544, 1558 (D.Utah 1993); *Cherry v. Rockdale County,* 601 F.Supp. 78, 81 (N.D.Ga. 1984). Importantly, the Eleventh Circuit has directed that "the standard of reasonableness is to be given a liberal interpretation." *Dowdell,* 698 F.2d at 1192; *accord NAACP v. City of Evergreen,* 812 F.2d 1332, 1337 (11th Cir.1987). The Eleventh Circuit and district courts in this Circuit uniformly have allowed recovery of such expenses as photocopying, postage, long distance phone calls, necessary travel, and on-line research. *Cullens v. Georgia Dept. of Transp.,* 29 F.3d 1489, 1494 (11th Cir. 1994) ("The [district] court denied telephone and travel expenses on the ground that 28 U.S.C. § 1920 does not provide for their recovery. The government acknowledges that this was error ..."); *Dowdell,* 698 F.2d at 1192; *Mallory v. Harkness,* 923 F.Supp. 1546, 1557 (S.D.Fla.1996); *Cherry,* 601 F.Supp. at 81. The policy underlying this broad recovery of expenses has been stated by the Eleventh Circuit as follows:

12) awards in similar cases.
*Johnson,* 488 F.2d at 717–19; *accord Farley,* 197 F.3d at 1340 n. 7; *Gaines v. Dougherty County Bd. of Ed.,* 775 F.2d 1565, 1571 n. 13 (11th Cir.1985); *Jones v. Central Soya Co.,* 748 F.2d 586, 588 n. 1 (11th Cir.1984); *Dowdell v. City of Apopka,* 698 F.2d 1181, 1187 n. 8 (11th Cir.1983).

Reasonable attorneys' fees under the Act must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation. The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys. If these costs are not taxable, and the client, as is often the case, cannot afford to pay for them, they must be borne by counsel, reducing the fees award correspondingly.

*Dowdell,* 698 F.2d at 1190.

## B. *Evaluating the Lodestar*

Defendants contend that Plaintiffs are not entitled to the full amount of attorneys' fees and expenses, totaling about $2.02 million, on the grounds that Plaintiffs Kelley and Lowe did not prevail on the claims they asserted and that Bryant and Drake did not prevail against Defendant Williams or Defendant Stone. Defendants claim, generally, that Plaintiffs Bryant and Drake were only partially successful in the litigation and thus the attorneys' fees and expenses claims should be reduced to account for "unsuccessful claims and for limited success" in the litigation.[9] Defendants misapprehend the law that applies here and ignore the central, unified theory based upon the core set of facts upon which Plaintiffs' claims were based and which qualifies Plaintiffs Bryant and Drake each as a prevailing party and which warrants a complete, reasonable award of attorneys' fees and expenses.

A civil rights plaintiff qualifies as a prevailing party when the plaintiff obtains an enforceable judgment against the party from whom fees are sought. *Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). That is, a plaintiff prevails for the purposes of § 1988 when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). "Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award." *Farrar,* 506 U.S. at 114, 113 S.Ct. 566 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). In some cases an award of attorneys' fees may not be reasonable where a plaintiff has achieved only partial or limited success. *Id.* However, where Plaintiffs' "claims for relief will involve a common core of facts or will be based on related legal theories ... [m]uch of counsel's time will be devoted generally to the litigation as a whole making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. "Such a lawsuit cannot be viewed as a series of discrete claims." "The district court should focus on the significance of the overall relief obtained by the Plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

Defendants rely on *Farrar* to support their argument that the Court should count up the number of claims on which

---

**9.** Defendants stated in their Opposition that when Plaintiff filed their "detailed specification and itemization of the requested award" Defendants would respond to the specifics of "Plaintiffs's fee request once it is filed." (Def. Initial Brief in Opp. to Pls.' Mot. for Att'y Fees and Exp. 17.) Plaintiffs filed their specification on May 14, 2010. Defendants responded to the specification on June 1, 2010.

Plaintiffs Bryant and Drake prevailed and compare such number with the total number of all of the claims asserted in the case, making a percentage reduction in the fees and expenses claimed to account for the "partial or limited" success achieved in the litigation. This deconstructionist approach ignores the nature of the claims asserted and otherwise misinterprets what a prevailing party is required to show to support a reasonable fee and expense award.

 Success is not determined based on the formulaic approach advocated by the Defendants. Where a plaintiff has prevailed on less then all of the claims asserted, the Court should address two questions. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for a fee award? *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. In some cases "plaintiff's claims for relief will be based on related legal theories [and] . . . much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* In cases where the claims are related, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Where the results are excellent, plaintiff's attorney "should recover a fully compensatory fee." *Id.*[10] Put another way, where there is an interrelation of facts and legal theories in a case it is not error for a district court to refuse "to apportion the fee award mechanically on the basis of [a plaintiff's] success or failure on particular

issues." *Id.; Duckworth v. Whisenant,* 97 F.3d at 1397 (reasonable fee should include time spent on all claims arising from the same course of conduct and share a common core of fact).

The Court has presided over this matter for almost six years. During the meetings, conferences, hearings and trial, the Court and the Defendants have understood that Plaintiffs' theory in this case— one unique to this litigation and unique to these Defendants—was that DeKalb County, Defendant Jones, and Defendants Stogner and Drew devised, designed, and implemented a county-wide policy of discrimination to increase African–American supervisors in the county and in so doing caused county managers to suffer discrimination. It was the implementation and prosecution of this discriminatory policy and its impact upon Plaintiffs Drake and Bryant that lead to the jury's finding of discrimination and that the discrimination was willful and purposeful, warranting the award of punitive damages. All of the claims here, those on which Plaintiffs prevailed and those on which they did not, were related, were based on this central, unifying theory of liability, and concerned the same core set of facts and the same course of discriminatory conduct. The central unified theory upon which all of the claims were based was aggressively and vigorously litigated by Defendants.

 The Court resists, indeed rejects, Defendants' mechanical approach to the determination of attorneys' fees and costs. To accept it would deny Plaintiffs adequate compensation for their time and their effect. Indeed, the effort to prosecute and the evidence offered on these claims was necessary and valuable to the prosecution

---

**10.** In *Hensley,* the court stated: "We agree with the District Court's rejection of 'a mathematical approach comparing the total number

of issues in the case with those actually prevailed upon.'" *Id.* at 435 n. 11, 103 S.Ct. 1933.

of the claims of each of the Plaintiffs. This interrelation was critical to corroborate and provide context for the claims that were successful. This simply illustrates that all of the claims in the case were intricately interrelated upon a central unified discriminatory policy and practices put into place in DeKalb County by those in authority to implement them. That is, Plaintiffs are entitled to a full and fair award of attorneys' fees and expenses. That said, the Court also chooses to reduce the fees sought by a modest amount, to account for Plaintiffs' failure to prevail on those claims for which Defendant Stogner was found to have legislative immunity and for the failure ultimately to prevail on claims against Defendant Stone. The Court notes that the facts on which the claims against Stone were based and the overarching scheme of discrimination alleged in this case, including evidence of Stone's conduct, still was central to the claims on which Plaintiffs Bryant and Drake prevailed—a fact the Court has taken into consideration in applying the reduction it has made.

### 1. *The lodestar evaluation*

The Court turns to its review of the attorney and expense statements submitted by Plaintiffs Bryant and Drake in support of their Motion for Award of Attorneys' Fees and Expenses Pursuant to 42 U.S.C. § 1988(b). The Court notes that Defendants' "Objections to Plaintiffs' Motion for Attorneys' Fees and Expenses" largely rehash arguments they made in their Initial Opposition to Motion for Attorneys' Fees and Expenses. The Objections are often overreaching and bombastic. The submission is emblematic of the manner in which Defendants have elected to litigate this case, a litigating strategy uncharacteristic of Defendants who are public entities and officials who are provided legal defense services paid for by taxpayers. Defendants' statement that Plaintiffs' submission in support of their attorneys' fees and expenses is a "complete failure to meet their burden of maintain proper records and a wholesale failure to exercise even minimal billing judgment," Obj. at 19, is disingenuous considering that the cost of Defendants' legal services appear by press accounts and public information to exceed what Plaintiffs have requested.

### 2. *Hourly rates*

Defendants do not challenge the hourly rates used to bill the services rendered. The Court, considering the opinion expressed by Frank B. Strickland and the Court's long experience practicing law in this market and its review of fee applications over the last six years, concludes the hourly rates charged by counsel for the Plaintiffs are reasonable.

### 3. *Legal services performed*

■ The Court has reviewed the description for legal services performed by counsel for the Plaintiffs and has reviewed the specific objections asserted by Defendants to certain discrete services for which fees are sought. The Court has reviewed each page of the statements for fees and expenses that were submitted in support of Plaintiffs' Motion for Attorneys' Fees and Expenses. Specifically, the Court has reviewed the statements submitted to determine whether fees and expenses were charged for claims unrelated to the claims on which Plaintiffs Bryant and Drake prevailed at trial. Based on the Court's detailed review, it determines that the services performed and the description of them are services for which Plaintiffs are entitled to be awarded fees at the hourly rates charged. However, upon review of those services for which Defendants have asserted a specific objection, the Court

determines that Plaintiffs are not entitled to a fee award for the following:

a. Fees ($3,943) for representation of Ms. Robinson in litigation brought against Defendant DeKalb County. These fees were not reasonably incurred in connection with the claims asserted in this litigation and are not allowed.

b. Fees ($10,512) for representation of plaintiffs in *McMillan v. DeKalb County*, No. 1:04–cv–3039 (N.D.Ga). While somewhat related to the claims in this case, these were depositions for use by counsel other than the Plaintiffs' in other discrimination litigation and thus the Court concludes these services should not be compensated.

c. Fees ($15,740) for representing plaintiffs in state court Open Records Act ("ORA") litigation for information the Court required to be produced in this action. While this ORA litigation was initiated to seek computer information for use in this case, the request for this information was made in this case in discovery and thus it was not necessary to incur the expense of this ancillary, albeit related, proceeding.[11]

d. Fees related to media interviews and information requests ($8,715.07) are not proper fee requests because they are not for legal services required to prosecute the claims asserted in the action.

e. Fees associated with the cancelled deposition of Beverly Gary ($880.00) are not compensable attorney fee expenses. The costs associated with the interview of this witness are allowed.

f. Fees of investigator Richard L. Hyde to attend trial ($8,140.00) were not for necessary services although the Court allows the fee charged in connec-

tion with the matters that arose during trial regarding Mr. Stone.

g. Fees associated with preparation of video clips that were not used at trial (which the Court estimates at $4,350.00) are not allowed although the Court does allow the preparation for use of the Sanctions program and the preparation of technology for use at trial.

To the extent Defendants assert their general objection to the detail provided in the description of legal services for which compensation is requested, the Court's independent review of the statement submitted in support of Plaintiffs' fee application was sufficient for the Court to evaluate the reasonableness of the fees requested for the services performed.

Based on the Court's consideration of the objections to fees discussed above, the Court reduces the fees requested by $52,280.07. The Court reduces the compensable fees by an additional $198,759.50, to account for the dismissal of the claim based on the legislative immunity defense and the dismissal of claims against Defendant Stone. Thus, the Court awards total attorney fees of $1,788,835.50.

### 4. *Expenses*

The Court also has reviewed the expenses charged and the Defendants' objection to the expenses. Having conducted a detailed review of each expense and the objections of the Defendants, the Court finds the expenses claimed allowable except as follows:

a. Meals and expenses for secretarial overtime ($2,852.98)

b. Fees related to press reports ($600.00)

---

11. The Court overrules the objection to fees incurred for the appointment of an administrator for the Estate of Plaintiff Bryant who died during the prolonged processing of this case. The appointment process was necessary to allow Mr. Bryant's claims to be prosecuted and is directly related to the case.

c. Travel costs for cancelled deposition ($965.88)

d. ORA expert retainer ($1,000.00)

e. Parking ($120.00)

f. Other cases filing fees ($635.00)

g. Unspecified expenses ($1,917.91)

The total expenses for which reimbursement is not allowed is $8,091.77 for a total award of expenses in the amount of $102,292.80.

### C. Other Amounts and Attorney Fee Compensation Theories

Plaintiffs seek fees to be awarded as a sanction for Defendants' litigation conduct and abuses, and ask for an enhancement of the award of attorneys' fees also based on defense counsels' conduct and for the result achieved. As the Court has noted, the conduct of defense counsel in this case, and especially their conduct at trial, is a great personal and professional disappointment. We live in an age of "win at all costs" litigation. This was the strategy apparently preferred by the Defendants and accommodated by their lawyers. It is how law is sometimes practiced these days, and it is regrettable. The Court is required to award a fair fee and expenses and it has done that. In the end, the fee award here is significant because Defendants and their lawyers employed a defense strategy that made this litigation expensive for the Plaintiffs and for the Defendants. In the end, the employment policy of the Defendants and their public-entity employer were exposed and the jury announced its verdict of disapproval and disdain of it. The question is: will the enactment of policies based on racial favor end? This case questions whether it ever will.

The award of attorneys' fees and expenses here is fair, reasonable compensation for the worked performed at the hourly rates of the timekeepers who performed it, unenhanced.

Accordingly,

**IT IS HEREBY ORDERED** that Motion for Attorneys' Fees and Expenses [474] is **GRANTED** and Plaintiffs are awarded attorneys fees in the amount of $1,788,835.50 and expenses in the amount of $102,292.80, for a total award of attorneys' fees and expenses of $1,891,128.30.

**IT IS FURTHER ORDERED** that Plaintiffs Motion for Sanctions by an award of attorneys' fees and expenses [451] is **DENIED AS MOOT.**